FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT  ... N. ...

★    JAN 19 2010

P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JAMAL EVANS,

                                        Plaintiff,                    **MEMORANDUM and ORDER**

            — against —                                               06-CV-3284 (SLT) (LB)

CLYDE SOLOMON and
UNITED STATES OF AMERICA

                                        Defendants.
-----------------------------------------------------------------X
**TOWNES, United States District Judge:**

        *Pro se* plaintiff, Jamal R. Evans, ("Plaintiff") brings this action under *Bivens v. Six*

*Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*") and

the Federal Torts Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.* ("FTCA"). Plaintiff asserts

claims for false arrest, unreasonable search and seizure, and excessive force against Clyde

Solomon, a police officer with the United Sates Park Police, and the United States (collectively

"Defendants"). In Plaintiff's motion papers, he further maintains claims for malicious

prosecution and malicious abuse of process. Defendants now move for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure on all claims. For the following

reasons, Defendants' motion is granted in part and denied in part.

                                        *BACKGROUND*

        On July 23, 2003, Plaintiff, a loss prevention manager at a major department store, was

driving to work from his home in Brooklyn, New York. Defs. Rule 56.1 Stmt. ¶ 5. At

approximately 3:00 p.m. on that day, while going eastbound on Avenue N in Brooklyn, Plaintiff

observed a white car traveling in close proximity to his vehicle. The white vehicle continued to

closely follow Plaintiff's car even after he had to cut diagonally across Kings Highway on

Avenue N. Ex. L, Evans Dep. 87:12-18. Plaintiff felt threatened by the tailgating car because

he feared the driver could be someone he had had arrested as part of his job as a loss prevention manager. *Id.* at 88:11-20. Unbeknownst to Plaintiff, the white vehicle was an official U.S. Park Police vehicle driven by U.S. Park Police Sgt. Clyde Solomon. At the time, Sgt. Solomon was assigned to the U.S. Park Police New York Field Office, which encompasses Brooklyn, Queens, Staten Island, Manhattan, and New Jersey. Defs. Rule 56.1 Stmt. ¶ 7. On July 23, 2003, Sgt. Solomon was on-duty, assigned to Brooklyn, and on patrol by himself, near Avenue N and Nostrand Avenue. *Id.* at ¶ 10.

As the two vehicles approached the intersection of Avenue N and East 35th Street, Plaintiff made a decision to "lose" the white car. Ex. E, Evans Dep. 105:1-5. Plaintiff "decided to make an aggressive move to get away from this [white] car." Ex. B., Evans Dep. 5:1-2. Both vehicles were in the left lane of Avenue N when Plaintiff shifted to the right lane on Avenue N as he was approaching the traffic light at Avenue N and East 35th Street. In crossing lanes, Plaintiff believes that the front of his car may have crossed a solid double line. Ex. E, Evans Dep. 106:10-12. Plaintiff then drove slowly toward the traffic light, intending to give the driver of the white vehicle the impression that he was stopping at the light. *Id.* at 106:17-24-107:1-4. At the intersection when the light was yellow, Plaintiff's foot was on the brake but his vehicle did not stop. Pl. Rule 56.1 Stmt. ¶ 42. Plaintiff made a right turn onto East 35th Street, at approximately 10-15 miles per hour without using his blinker. Defs. Rule 56.1 Stmt. ¶ 43; Ex. E, Evans Dep. 108:17-20.

When Plaintiff made the right onto East 35th Street, it was his intention for the white vehicle to be governed by the red light and to not be able to proceed through the intersection. Ex. E., Evans Dep. 120:9-14. Plaintiff stated that he made his right turn as the "light went from

yellow to red." *Id.* at 97:19-20; *see also* Ex. B, Evans Dep. 5:3-4 ("As the yellow light went off, I took off through the light."). Later, when asked if he knew the color of the traffic light as he made his right turn, Plaintiff testified, "No, I couldn't see the light. [L]et me correct that. When I turned, the light had just shut off from being yellow. So it was -- no, I can't even say I saw it shut off. I saw it yellow and then I turned." Ex. E, Evans Dep. 109:14-19. At the very least, Plaintiff admitted, "I have no doubt in my mind that Sergeant Solomon looked up and saw a red light because that's what it was designed to do, to get him off my rear of the bumper." Ex. B, Evans Dep. 5:4-7.

After Plaintiff's turn onto East 35th Street, he made a left on Flatlands Avenue and then made a right onto East 36th Street. Defs. Rule 56.1 Stmt. ¶ 48. Sgt. Solomon followed Plaintiff's car, pulled him over on East 36th Street between Flatlands Avenue and Avenue P, exited his vehicle and walked over to Plaintiff's passenger side. *Id.* at ¶ 58. At this point, Plaintiff observed the "Park Police" insignia on the white vehicle and Sgt. Solomon's police uniform. *Id.* at ¶ 62. Sgt. Solomon advised Plaintiff that he had gone through a red light and Plaintiff denied running the light. *Id.* at ¶¶ 64-65. Sgt. Solomon asked for Plaintiff's license and registration, but Plaintiff did not comply with the request. *Id.* at ¶ 69-70. Instead, Plaintiff questioned Sgt. Solomon as to whether he had the authority to stop Plaintiff and issue him a traffic violation. *Id.* at ¶ 71. Sgt. Solomon then attempted to explain his authority to Plaintiff and identified himself as a federal law enforcement officer. *Id.* at ¶ 72. Sgt. Solomon then asked Plaintiff to get out of his vehicle. *Id.* at ¶ 73. When Sgt. Solomon asked Plaintiff exit his vehicle, Plaintiff verbally inquired as to why Sgt. Solomon was asking him to get out of his car. Pl. Rule 56.1 Stmt. ¶ 74.

Plaintiff called 911 and requested the New York Police Department ("NYPD") to arrive on scene. Ex. M, Evans Letter to Bean 2 (July 23, 2003).

Sgt. Solomon went back to his vehicle and pulled in front of Plaintiff's vehicle at an angle to prevent Plaintiff from leaving the scene. Defs. Rule 56.1 Stmt. ¶ 76. At this point, Sgt. Solomon again requested Plaintiff's license and registration, stating "Are you going to give me your license and registration?" *Id.* at ¶ 79. Plaintiff responded that he would give Sgt. Solomon his license upon the NYPD's arrival. Ex. M, Evans Letter 2. He wanted the NYPD to determine whether or not he had to give Sgt. Solomon his license and registration. Defs. Rule 56.1 Stmt. ¶ 82.

At that point, Sgt. Solomon communicated through his U.S. Park Police radio system that he had someone resisting and needed additional units. *Id.* at ¶ 89. Officer Damiano Parlanti, a K9 officer with the U.S. Park Police, responded to Sgt. Solomon's call. *Id.* at ¶ 90. When Officer Parlanti arrived on the scene, Sgt. Solomon asked Plaintiff for a third time to produce his license and registration. *Id.* at ¶ 97. Plaintiff still did not produce his license and registration. *Id.* at ¶ 98. Sgt. Solomon then warned Plaintiff, "Do you realize that we could arrest?" Ex. E, Evans Dep. 173:15-17. Sgt. Solomon then grabbed Plaintiff's right wrist, turned it behind his back, and pushed Plaintiff up against his vehicle. Defs. Rule 56.1 Stmt. ¶ 101. Plaintiff's body was pinned against his vehicle with his left hand between his body and the car and his right wrist was held behind his back by Sgt. Solomon. *Id.* at ¶ 102. The officers applied pressure on him to keep him against the vehicle and when Plaintiff attempted to turn his head to ask a question, Sgt. Solomon twisted his arm harder to get Plaintiff to stay straight. Defs. & Pl. Rule 56.1 Stmt. ¶¶ 104-05. With Plaintiff pinned up against his vehicle, Sgt. Solomon pulled Plaintiff's wallet out

4

of his pants pocket and obtained Plaintiff's driver's license from his wallet. Defs. Rule 56.1 Stmt. ¶ 107. Sgt. Solomon then released Plaintiff.

Plaintiff was "very upset" after the search for his wallet and began pacing back and forth the length of his vehicle, adjacent to the lane of traffic on East 36th Street. Ex. E, Evans Dep., 190:16-22, 191:9-15, 194:15-18. Plaintiff stated in a loud voice, "What, where are we, in Communist Russia? Is this a Communist country? Did I suddenly become part of a Communist country?" Defs. Rule 56.1 Stmt. ¶ 115. Sgt. Solomon turned to Plaintiff and stated, "Stand still." Ex. E, Evans Dep. at 194:20-21. Plaintiff stopped immediately, but later, after some words, he rolled his eyes and turned around toward his car. *Id.* at 195:18, 197:2-5. At that point, Sgt. Solomon and Parlanti handcuffed Plaintiff and told him, "We're handcuffing you for your own safety." *Id.* at 202: 19-25. They placed Plaintiff into Sgt. Solomon's vehicle.

Sgt. Solomon left the scene for approximately 10 to 15 minutes with Plaintiff handcuffed in the backseat of Solomon's vehicle. Defs. Rule 56.1 Stmt. ¶¶ 139-40. When Sgt. Solomon returned to the scene, he directed Officer Parlanti to unhandcuff Plaintiff. *Id.* at ¶ 140. Sgt. Solomon then issued Plaintiff three summonses: (1) failure to obey a red signal; (2) disorderly conduct; and (3) failure to obey a lawful order. *Id.* at ¶ 150. Plaintiff signed one of the three summonses. *Id.* at ¶ 149. Plaintiff eventually pleaded guilty to the failure to obey a red light violation and paid a $100.00 fine. Ex. K, Certificate of Disposition. The other summonses were dismissed. *Id.*

Plaintiff commenced this suit on July 7, 2006, against Sgt. Solomon and the United States, alleging claims under *Bivens* and the FTCA. Defendants moved for summary judgment on September 11, 2008 on all claims. The Court now considers the instant motion.

5

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). No genuine triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotation marks omitted) (alteration in original).

In a *Bivens* action, "it would usually be a jury's task to decide whether a detention amounted to a *de facto* arrest, since '[t]he issue of precisely when an arrest takes place is a question of fact.'" *Oliveira v. Mayer*, 23 F.3d 642, 645 (2d Cir. 1994) (quoting *Posr v. Doherty*, 944 F.2d 91, 99 (2d Cir.1991)). Where, however, "there can be but one conclusion as to the verdict that reasonable [jurors] could have reached" as to the existence of a *de facto* arrest, it is appropriate for a court to decide the question on summary judgment. *Id.* (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 359 (2d Cir. 1992)) (alteration in *Oliveira*).

"In order to defeat [a] claim of false arrest on a motion for summary judgment, [the movant-defendant must] show that probable cause existed and that there was 'no dispute as to the pertinent events and the knowledge of the officers.'" *Farag v. United States*, 587 F. Supp. 2d 436, 450 (E.D.N.Y. 2008); *see also Walczyk v. Rio*, 496 F.3d 139, 158 (2d Cir. 2007) ("[W]here there is no [material] dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." (citations omitted)).

Finally, though the existence of qualified immunity "ordinarily should be decided by the court long before trial[,]" *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (citation omitted), "that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration [of the underlying facts] is normally required." *Oliveira*, 23 F.3d at 649 (citations omitted).

## II.     *Bivens* Claims

"[W]here an individual has been deprived of a constitutional right by a federal agent acting under color of federal authority, the individual may bring a so-called *Bivens* action for damages against that federal agent in an individual capacity. . . ." *Lombardi v. Whitman*, 485 F.3d 73, 78 (2d Cir. 2007) (internal quotation marks and citation omitted).  Here, Plaintiff asserts *Bivens* claims against Defendants for false arrest,[1] unreasonable search and seizure, and excessive force.  In his motion papers, Plaintiff also raises *Bivens* claims of malicious prosecution and malicious abuse of process.

### A.     False Arrest

A *Bivens* claim for false arrest derives from the right to be free from unreasonable searches and seizures, including the right to be free from arrest absent probable cause.  *Weyant v.*

---

[1]   Although Plaintiff consistently refers to this claim as "unlawful arrest," *see, e.g.*, Pl.'s Opp. Br. 6, the Court sees no distinction in terms.

*Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To prove the elements of false arrest, a plaintiff must show that: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). With respect to the fourth element, the existence of probable cause gives an officer the privilege to arrest and "is a complete defense to an action for false arrest." *Bernard*, 25 F.3d at 102; *see also Weyant*, 101 F.3d at 852.

Probable cause to arrest exists when authorities have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to cause a person of reasonable caution to believe that the person to be arrested has committed or is committing a crime. *Weyant*, 101 F.3d at 852. It requires only a "probability" or a "substantial chance" that a crime has taken or is taking place. *United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir. 1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)); *cf. United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004) ("The standard does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found."). Whether or not there was probable cause to arrest depends on the information available at the time of the arrest, *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998), judged against the "totality of the circumstances," *Williams v. City of New York*, No. 02-CV-3693, 2003 WL 22434151, at *3 (S.D.N.Y. Oct. 23, 2003) (citing *Gates*, 462 U.S. at 233). The plaintiff bears the burden of demonstrating a lack of probable cause for the arrest. *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 143-46 (1979)).

### i.     U.S. Park Police Authority To Enforce Traffic Violations

First, Plaintiff questions the authority of Solomon, as a U.S. Park Police officer, to stop him, search him, and issue traffic summonses on a New York City street. As the Second Circuit has held, "where the arresting officer had probable cause to believe that a traffic violation occurred or was occurring in the officer's presence, *and was authorized by state or municipal law to effect a custodial arrest for the particular offense*, the resulting arrest will not violate the Fourth Amendment." *United States v. Scopo*, 19 F.3d 777, 784 (2d Cir. 1994) (emphasis added). Thus, as a threshold matter, the scope of Solomon's authority under state or municipal law must be resolved.

Under New York State law, persons designated as "peace officers" have the authority to effect ten specified state law enforcement powers. *See* N.Y. Crim. Proc. L. § 2.10 ("Persons designated as peace officers"), § 2.20 ("Powers of peace officers"). New York State law also confers four "peace officer" powers on enumerated federal law enforcement officers. *Id.* at § 2.15 ("Federal law enforcement officers; powers") (granting designated federal law enforcement officers with the powers provided by N.Y. Crim. Proc. L. § 2.20(a), (b), (c) and (h) with the exception, *inter alia*, of the authority to make a warrantless arrest under N.Y. Crim. Proc. L. § 140.25(1)(b)); *see People v. Brenno*, 834 N.Y.S.2d 850, 851 (N.Y. St. Lawrence Co. Ct. 2007).[2]

---

[2] The four peace officer powers delegated to federal law officer include,

> (a) The power to make warrantless arrests pursuant to section 140.25 of this chapter [with the exception of the powers provided by paragraph (b) of subdivision one and paragraph (b) of subdivision three of section 140.25 of this chapter];
> (b) The power to use physical force and deadly physical force in making an arrest or preventing an escape pursuant to section 35.30 of the penal law.
> (c) The power to carry out warrantless searches whenever such searches are constitutionally permissible and acting pursuant to their special duties.

Among these federal law enforcement officers granted peace officer authority are officers of the "United States park police." *Id.* at § 2.15(9). In fact, U.S. Park Police officers are granted broader authorities than most of their federal counterparts. *Id.*[3] While federal law enforcement officers are generally limited to four peace officer powers, U.S. park police officers are also authorized to enforce three additional peace officer powers and to make warrantless arrests under N.Y. Crim. Proc. L. § 140.25(1)(b). *Id.* (granting U.S. Park Police with the powers provided by N.Y. Crim. Proc. L. §§ 2.20(d), (e), (g)).[4]

---

> (h) The power to possess and take custody of firearms not owned by the peace officer, for the purpose of disposing, guarding, or any other lawful purpose, consistent with his duties as a peace officer.

N.Y. Crim. Proc. L. § 2.20.

[3]  New York Criminal Procedure Law § 2.15(9) provides in relevant part:

> The following federal law enforcement officers shall have the powers set forth in paragraphs (a) (with the exception of the powers provided by paragraph (b) of subdivision one and paragraph (b) of subdivision three of section 140.25 of this chapter), (b), (c) and (h) of subdivision one of section 2.20 of this article: . . .

> 9. United States park police; provided, however that, notwithstanding any provision of this section to the contrary, such park police shall also have the powers set forth in paragraph (b) of subdivision one of section 140.25 of this chapter and the powers set forth in paragraphs (d), (e) and (g) of subdivision one of section 2.20 of this article.

[4]  The three additional peace officer powers are, in relevant part,

> (d) The power to issue appearance tickets pursuant to subdivision three of section 150.20 of this chapter, when acting pursuant to their special duties. . . .
> (e) The power to issue uniform appearance tickets pursuant to article twenty-seven of the parks, recreation and historic preservation law and to issue simplified traffic informations pursuant to section 100.25 of this chapter and section two hundred seven of the vehicle and traffic law whenever acting pursuant to their special duties.
> (g) The power to issue uniform appearance tickets pursuant to article seventy-one of the environmental conservation law, whenever acting pursuant to their special duties.

Thus, U.S. Park Police have the authority to effectuate a number of New York State law enforcement powers. Most significantly for this case, U.S. Park Police have the authority to make warrantless arrests under New York State law under two conditions found in N.Y. Crim. Proc. L. § 140.25(1) and (3). *See* N.Y. Crim. Proc. L. § 2.15; 2.20(a). Under the first condition for warrantless arrests, if "acting pursuant to his special duties," a U.S. Park police officer may effect a warrantless arrest for "[a]ny offense when he has reasonable cause to believe that such person has committed such offense in his presence;" or for "[a] crime when he has reasonable cause to believe that such person has committed such crime, whether in his presence or otherwise." N.Y. Crim. Proc. L. § 140.25(1)(a)-(b). An officer acts "pursuant to his special duties" in his arrest authority if he makes an arrest under a statute he "is required or authorized to enforce" "by reason of the specialized nature of his particular employment or by express provision of law" or if the arrest is "an integral part of his specialized duties" under the "particular circumstances." *Id.* at 140.25(2)(a)-(b).

Under the second condition for a warrantless arrest, "whether or not he is acting pursuant to his special duties," a U.S. Park police officer "may arrest a person for an offense committed or believed by him to have been committed within the geographical area of such peace officer's employment . . . for any offense when such person has in fact committed such offense in his presence[.]" N.Y. Crim. Proc. L. § 140.25(3)(a). Thus, even if Sgt. Solomon was not acting within "his special duties" in stopping Plaintiff under N.Y. Crim. Proc. L. § 140.25(1)(a), the stop was permissible if it the traffic offense occurred within the U.S. Park Police officer's "geographical area of . . . employment." N.Y. Crim. Proc. L. § 140.25(3)(a).

---

N.Y. Crim. Proc. L. § 2.20(d), (e), (g).

11

Sgt. Solomon was authorized to make a warrantless arrest under either condition. First, Sgt. Solomon allegedly observed Plaintiff make a right turn on a red traffic signal, an "offense" subject to warrantless arrest under New York State law,[5] and he was acting pursuant to his "special duties" in stopping Plaintiff[6] – the requirements to make a warrantless arrest under N.Y. Crim. Proc. L. § 140.25(1)(a). Second, Sgt. Solomon was operating within his "geographical area of employment" for purposes of a warrantless arrest under N.Y. Crim. Proc. L. § 140.25(3). Although New York State law does not define "geographical area of employment" for federal

---

[5] First, making a right turn on a red traffic signal is a violation of § 4-03(a)(3) of Title 34, Chapter 4 of the N.Y.C. Traffic Rules & Regulations. The law requires that "[v]ehicular traffic facing [a steady red signal alone] shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until an indication to proceed is shown." N.Y.C. Traf. Rules & Regs. Title 34, Chap. 4, § 4-03(a)(3)(i) (2009), available at http://www.nyc.gov/html/dot/downloads/pdf/trafrule.pdf. Second, violations of New York City's traffic laws constitute a "traffic infraction" under New York State Law. *See* N.Y. Veh. & Traf. L. § 155. Third, article one hundred forty of New York's criminal procedure law generally prescribes the ability to effect a warrantless arrest for an "offense" under New York State law. *See* N.Y. Crim. Proc. L. Art. 140. Finally, N.Y. Vehicle and Traffic Law provides that, "[f]or purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense." *Id.* Taken together, a right turn against a red traffic signal constitutes an offense subject to warrantless arrest under N.Y. Crim. Proc. L. § 140.25. *See Scopo*, 19 F.3d at 785 ("Under New York State law, it is clear that a traffic offense can be a basis for an arrest.").

[6] Under New York State law, the U.S. Park Police have authority to issue uniform summonses to enforce traffic laws. *See* N.Y. Crim. Proc. L. § 2.20(e); N.Y. Veh. & Traf. L. § 207. These provisions have been construed to expand jurisdiction of U.S. Park Police officers to issue traffic citations beyond areas of pure federal jurisdiction. Indeed, an U.S. Department of Interior ("DOI") Memorandum, dated March 20, 1996, to the U.S. Park Police New York Field Office interprets the authority of U.S. Park Police to enforce traffic laws "at any location" under certain conditions. The DOI Memorandum states, "[i]n July 1995, the New York State Legislature granted the United States Park Police the authority to issue "Universal Summons" . . . while on duty and pursuant to the scope of [U.S. Park Police] employment." DOI Mem. Annexed to Defs. Supp. Br. "New York Universal Summonses may be issued for moving violations which occur within GATE or while an officer is traversing among beat areas . . . . Additionally, these summonses are authorized for issuance *at any location* when a flagrant violation occurs which exhibits clear disregard for public safety or if the [U.S. Park Police] will be put in a compromising position if no action were to be taken." *Id.* (emphasis added). Thus, the Court reads these provisions to permit an U.S. Park Police officer, acting as such, to enforce New York traffic laws pursuant to their "special duties."

law enforcement officers acting as state peace officers, *see id.* at § 140.25(5),[7] an officer is empowered to effectuate an arrest in the area of his federal assignment. In *United States v. Samuels*, a defendant argued that a traffic stop made by a federal Drug Enforcement Agency (DEA) officer was impermissible because he was not acting according to "specialized duties." No. 04-CR-649, 2004 WL 2823079, at *3 n.8 (S.D.N.Y. Dec. 7, 2004). The court disagreed, holding that a proper arrest can be made whether or not the officer was acting pursuant to his specialized duties under N.Y. Crim. Proc. L. § 140.25(3)(a) if within the officer's "geographical area of employment." *Id.* The court then held that a DEA special agent "assigned to conduct surveillance in the Bronx" who observes a traffic infraction is permitted to make a warrantless arrest pursuant to N.Y. Crim. Proc. L. § 140.25(3)(a). *Id.* Here, Sgt. Solomon was assigned to the U.S. Park Police's New York Field Office, which has jurisdiction over Brooklyn, Queens, Staten Island, Manhattan and New Jersey and thus he was empowered to make a warrantless stop under N.Y. Crim. Proc. L. § 140.25(3)(a) for a traffic offense.

### ii. Probable Cause to Stop

Having held that Sgt. Solomon had the authority to enforce traffic infractions and stop Plaintiff, the Court next turns to whether his stop of Plaintiff was reasonable. In order to effect a lawful traffic stop, "[t]he Fourth Amendment requires that an officer making [a traffic] stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *Holeman v. City of New London*, 425 F.3d 184, 189 (2d Cir. 2005). "Probable cause arises when the police reasonably believe that 'an offense has been or is being committed.'" *Scopo*, 19 F.3d at 781 (quoting *United*

---

[7]   Instead, N.Y. Crim. Proc. L. § 140.25(5) only defines the "geographical area of employment" of peace officers employed by agencies of a county, city, town, or village, and peace officers employed by private organizations. *United States v. Samuels*, No. 04-CR-649, 2004 WL 2823079, at *3 n.8 (S.D.N.Y. Dec. 7, 2004).

*States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987)). "When an officer observes a traffic offense --

however minor --- he has probable cause to stop the driver of the vehicle." *Id.* at 782 (quoting

*United States v. Cummins*, 920 F.2d 498, 500 (8th Cir. 1990)).

Defendants contend that probable cause justified Sgt. Solomon's decision to stop

Plaintiff's car. Plaintiff counters that "at most" Sgt. Solomon had only a "reasonable suspicion"

of a traffic violation and "reasonable suspicion" only supports a stop for "criminal activity." Pl.

Opp. Br. 8. Plaintiff contends that a traffic violation is not a criminal act and, thus, Sgt. Solomon

required more than a reasonable suspicion to effectuate a stop for a traffic violation.[8]

Furthermore, Plaintiff maintains that no probable cause supported the traffic stop.

In this case, the Court is satisfied that probable cause justified Sgt. Solomon's stop.

Plaintiff testified that he purposefully decided to attempt to "lose" the white car closely

following his at the intersection of Avenue N and 35th Street and to make an "aggressive move"

to get away from this car. The white car turned out to be Sgt. Solomon's official park police

cruiser. Plaintiff admitted that he quickly shifted from the left to right lane in such a way that his

tires likely crossed a solid double line. As he approached the traffic light at the intersection,

Plaintiff slowed down to give the driver of the white vehicle the impression that he was stopping

at the light. At that point, Plaintiff made a quick right turn onto East 35th Street, at

approximately 10-15 miles per hour without using his blinker. Plaintiff at first explained that he

---

[8] Contrary to Plaintiff's arguments, an officer only requires "reasonable suspicion" of a traffic violation to effectuate a permissible traffic stop. *See United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). While New York law appears not to criminalize moving violations, *see* N.Y. Veh. & Traf. Law § 155 ("A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment[.]"), the Second Circuit unambiguously held that "the reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *Id.* Thus, probable cause or reasonable suspicion is enough to justify a traffic stop.

14

made his turn after the light turned from yellow to red, but then later professed uncertainty as to whether the light was yellow or red at the time of his turn. Nevertheless, it is uncontroverted that Plaintiff made the right turn when the traffic light would have been red for the car traveling closely behind his car. In Plaintiff's own words, "I have no doubt in my mind that Sergeant Solomon looked up and saw a red light" after he made his right turn. Based on this testimony, the Court finds that Sgt. Solomon had reason to believe that a traffic violation was committed and thus had probable cause to stop Plaintiff's car. *See* N.Y.C. Traf. Rules & Regs. Title 34, Chap. 4, § 4-03(a)(3)(i).

Furthermore, Plaintiff pleaded guilty to failure to obey a red light and paid a $100.00 fine. A guilty plea is the equivalent of a conviction. *Simmons v. Kelly*, No. 06-CV-6183, 2009 WL 857410, at *5 (S.D.N.Y. March 31, 2009). "A guilty plea that is not overturned on appeal provides conclusive evidence of probable cause." *Id.* Thus, Plaintiff's guilty plea conclusively establishes probable cause for Sgt. Solomon's traffic stop. Accordingly, the Court holds that Sgt. Solomon's stop of Plaintiff's vehicle was lawful.[9]

### iii.    Authority to Handcuff Plaintiff

As probable cause supported Plaintiff's traffic stop, his placement in handcuffs did not alter the constitutionality of the detention. Generally, a traffic stop is analogous to a brief detention under *Terry v. Ohio,* 392 U.S. 1, 21 (1968). *See Arizona v. Johnson*, 129 S. Ct. 781,

---

[9]  At some point after Sgt. Solomon stopped Plaintiff's car, Sgt. Solomon asked Plaintiff to get out of his vehicle. It is well settled that Sgt. Solomon acted within his authority in asking Plaintiff to exit his car. The Supreme Court has held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Arizona v. Johnson*, 129 S. Ct. 781, 788 (2009) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977)). *See also Maryland v. Wilson*, 519 U.S. 408, 415 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop."). Accordingly, since Sgt. Solomon permissibly stopped Plaintiff's car, he was also authorized to order Plaintiff out of the car.

784 (2009) (holding that a traffic stop satisfies *Terry* investigatory stop condition "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation"); *Knowles v. Iowa*, 525 U.S. 113, 117 (1998) ("A routine traffic stop is a relatively brief encounter and 'is more analogous to a so-called *Terry* stop . . . than to a formal arrest.'") (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). As the Second Circuit has observed, "although '[u]nder ordinary circumstances, . . . using handcuffs [is] not part of a *Terry* stop [,] intrusive and aggressive police conduct'" is permissible "'when it is a reasonable response to legitimate safety concerns on the part of the investigating officers.'" *United States v. Vargas*, 369 F.3d 98, 102 (2d Cir. 2004) (quoting *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001)). Thus, "where an officer has a reasonable basis to think that the person stopped poses a present physical threat to the officer or others, the Fourth Amendment permits the officer to take 'necessary measures . . . to neutralize the threat'" including "the use of handcuffs[.]" *United States v. Newton*, 369 F.3d 659, 674 (2d Cir. 2004) (quoting *Terry*, 392 U.S. at 24); *see also United States v. Walker*, 7 F.3d 26, 29 (2d Cir. 1993) ("A police officer may stop an individual 'in an appropriate manner' based on whether 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'"). Thus, "[p]olice officers engaged in an otherwise lawful stop must be permitted to take measures—including the use of handcuffs-they believe reasonably necessary to protect themselves from harm, or to safeguard the security of others." *United States v. Acosta-Colon*, 157 F.3d 9, 18 (1st Cir. 1998). But, police officers may not use handcuffs as a matter of routine. *Id. See also United States v. Gori*, 230 F.3d 44, 56 (2d Cir. 2000) ("[i]t is well established that officers may ask (or force) a suspect to move as part of a lawful *Terry* stop"); *United States v. Sanchez*, No.

16

05-CR-30025, 2005 WL 2001510, at *5 (C.D. Ill. July 19, 2005) ("Officers may handcuff individuals that they temporarily detain during an investigation."); *United States v. Bailey*, 468 F. Supp. 2d 373, 385 (E.D.N.Y. 2006) (approving the use of handcuffs during a *Terry* stop).

Here, it is undisputed that Plaintiff was "very upset" after the search for his wallet and began pacing back and forth the length of his vehicle, adjacent to the lane of traffic on East 36th Street. At that point, Sgt. Solomon turned to Plaintiff and stated, "Stand still." Plaintiff stopped immediately, but later, after some words, he rolled his eyes and turned around toward his car. At that point, Sgt. Solomon and Officer Parlanti handcuffed Plaintiff, told him, "We're handcuffing you for your own safety," and placed him into Sgt. Solomon's vehicle.

In the Court's view, these circumstances justify restricting his movement for his own security and the security of others. Plaintiff admits to pacing in the street next to his car. Even if U.S. Park Police vehicles offered additional protection from potential oncoming traffic, a reasonable person would recognize that an upset individual pacing on the street, who had been less than compliant with police orders, would pose a safety hazard to himself or oncoming traffic. Thus, under these circumstances, Plaintiff's placement in handcuffs and the police vehicle did not transform Sgt. Solomon's permissible traffic stop into an unconstitutional false arrest.

Furthermore, to the extent Plaintiff argues that Sgt. Solomon may have had handcuffed him in retaliation for questioning his authority to effect the traffic stop, the argument is unavailing. An officer's subjective motivation is irrelevant to the probable-cause Fourth Amendment analysis. *See Whren*, 517 U.S., at 813 (noting the Supreme Court's

"unwilling[ness] to entertain Fourth Amendment challenges based on the actual motivations of individual officers").

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's false arrest claim.

### B.      Unreasonable Search and Seizure

Plaintiff next argues that Sgt. Solomon's search of his pants pocket to retrieve his wallet and identification violated the constitutional prohibition of unreasonable search and seizure. "Before [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." *Sibron v. New York*, 392 U.S. 40, 64 (1968). Under the Constitution, warrantless searches are *per se* unreasonable, unless they fall within one of a limited number of exceptions. *Thompson v. Louisiana,* 469 U.S. 17, 19-20 (1985) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Exceptions to the *per se* rule exist because "the ultimate touchstone of the Fourth Amendment" is the reasonableness of the search or seizure at issue. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Thus, if it is established that the place or object subjected to the warrantless search is one in which the Plaintiff had a reasonable expectation of privacy, Defendants have the burden of showing that the search was valid because it fell within one of the exceptions to the warrant requirement. *McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir. 1997).

#### i.      *Terry* Stop and Frisk

In this case, Defendants first contend that Sgt. Solomon's search of Plaintiff was justified as a limited search pursuant to *Terry*, 392 U.S. at 21. As articulated in *Terry*, the Fourth Amendment sanctions a warrantless investigatory stop (temporary detention) and frisk (pat-down

18

for weapons) under two conditions: (1) the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense; and (2) the police officer reasonably suspects that the person stopped is armed and dangerous. *See Johnson,* 129 S.Ct. at 784 (explaining *Terry* "stop and frisk"). In the traffic stop context, the first *Terry* condition is satisfied if the stop is based on a reasonable suspicion or probable cause that a traffic infraction was committed. *Merring v. The Town of Tuxedo, N.Y.,* No. 07-CV-10381, 2009 WL 849752, at *6 (S.D.N.Y. Mar. 31, 2009) (citing *United States v. Stewart,* 551 F.3d 187, 191 (2d Cir. 2009)). The Fourth Amendment then permits a police officer to frisk motorists for weapons if there is a reasonable belief that they are armed and dangerous. *Pennsylvania v. Mimms,* 434 U.S. 106, 111-12 (1977) (applying the *Terry* standard to traffic stop "pat downs"). In order to conduct a limited, self-protective search for weapons, an officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. *Id.* at 112; *see also Merring,* 2009 WL 849752, at *6 ("[J]ust as in the case of a pedestrian reasonably suspected of criminal activity, to justify a pat-down of the driver during a traffic stop, 'the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.'") (citing *Johnson,* 129 S.Ct. at 784). Additionally, "[t]he sole justification of [pat down] is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry,* 392 U.S. at 29.

In this case, Sgt. Solomon lawfully pulled Plaintiff over for failing to obey a steady red traffic signal and ordered him to exit his vehicle. Plaintiff then repeatedly refused Sgt. Solomon's requests for identification, instead questioning Sgt. Solomon's authority to stop him

on a city street. Sgt. Solomon then grabbed Plaintiff's right wrist, turned it behind his back, and pushed Plaintiff up against his vehicle. With Plaintiff pinned up against his vehicle, Sgt. Solomon pulled Plaintiff's wallet out of his pants pocket and obtained Plaintiff's driver's license from his wallet.

Under these circumstances, it is clear that Sgt. Solomon's restraint and search of Plaintiff was not for the purposes of assuring himself that Plaintiff was not secreting a weapon. At no time did Sgt. Solomon articulate a concern for his safety in deciding to restrain and search Plaintiff's pocket. Nor do Defendants allege that Plaintiff's wallet and identification resembled a weapon. Furthermore, Sgt. Solomon's search does not amount to a mere frisk. Sgt. Solomon spun Plaintiff against his car with his arm twisted around his back, put his hand in Plaintiff's pant pocket, and removed his wallet. These actions go far beyond a pat down for weapons, which entails a "limited search of the outer clothing of . . . persons in an attempt to discover weapons which might be used to assault [the officer]." *Terry*, 392 U.S. at 30-31. Thus, Sgt. Solomon's actions cannot be classified as a limited, protective *Terry* stop and frisk to gain the protection of the Fourth Amendment.

### ii. Search Incident to Arrest

Defendants next argue that, because Sgt. Solomon had probable cause to arrest Plaintiff for failing to produce an identification, he was also subject to a search to obtain his license in his pants pocket. Defs. Br. 21. The Court construes this argument to appeal to the "search incident to arrest" exception to the warrant requirement. Under the exception, a lawful custodial arrest permits a police officer to search "the arrestee's person and the area 'within his immediate control.'" *Arizona v. Gant*, 129 S.Ct. 1710, 1716 (2009) (citing *Chimel v. California*, 395 U.S.

20

752, 763 (1969)); *United States v. Robinson*, 414 U.S. 218, 235 (1973) (when police effect a lawful arrest, they may conduct a full search of the arrestee's person without any additional justification). Thus, Defendants maintain that since Plaintiff could have been arrested and subject to a full search incident to arrest, then Sgt. Solomon had the lesser power to search Plaintiff's person for his identification.

Here, Sgt. Solomon undoubtedly had probable cause to arrest Plaintiff based either on Plaintiff's traffic infraction[10] or on his refusal to furnish a driver's license.[11] An arrest pursuant even to a simple traffic violation permits a search incident to arrest. *Robinson,* 414 U.S. at 224 (search incident to arrest permissible where defendant was lawfully arrested for driving after revocation of his license); *see also Gustavson v. Florida,* 414 U.S. 260, 266 (1973) (search permissible where defendant arrested for driving without a license, after officer stopped vehicle for erratic driving and defendant could not produce license). Thus, once Sgt. Solomon acquired the authority to arrest Plaintiff, he was permitted to conduct a full search incident to arrest. *See Scopo,* 19 F.3d at 782 ("[O]nce the police had probable cause to stop and arrest Scopo, they were entitled to search both him and his 'grab space' in the car[.]"). Accordingly, Sgt. Solomon's act of reaching into Plaintiff's pocket to retrieve his wallet and then remove his identification would comport with the Fourth Amendment as a search incident to arrest.

---

[10] *See* nn.6-7 *supra*, and accompanying text; *see also Scopo*, 19 F.3d at 782 (holding that officers had probable cause to stop and arrest defendant when they directly observed him violating the traffic laws).

[11] Driving without a license is a traffic infraction. N.Y. Veh. & Traf. L. §§ 155 and 509. Failure of an operator to exhibit a license to a police officer is presumptive evidence that the operator is unlicensed. *Id.* at § 507(2). Similarly, failure of the operator to produce a registration is presumptive evidence that the vehicle is unregistered. *Id.* at § 401(4). Driving an unregistered vehicle is also a traffic infraction. *Id.* at §§ 155 and 401(1). Since Plaintiff refused to exhibit his identification upon Officer's Solomon's multiple requests, an immediate arrest for these infractions would have been justified. *See People v. Copeland*, 39 N.Y.2d 986, 986-87 (N.Y. 1976).

A difficulty in this case is that Defendants maintain that Plaintiff was not under formal or *de facto* arrest at the time of the search. Defs. Br. 21 n.3; Defs. Rule 56.1 Stmt. ¶ 100. Of course, probable cause to arrest obtained after a search cannot validate an otherwise unlawful search. *See Sibron*, 392 U.S. at 63 ("It is axiomatic that an incident search may not precede an arrest and serve as part of its justification."). Nevertheless, the fact that Plaintiff was not under arrest prior to the search does not alter its constitutionality under Second Circuit precedent so long as probable cause to arrest existed at the time of the search. *See United States v. Riggs*, 474 F.2d 699, 704 (2d Cir.) (1973) ("postponement of the further intrusion of arrest does not remove the justification for the search and in no way prejudices the individual's Fourth Amendment rights"); *United States v. Wilson*, No. 03-1395, 94 Fed. Appx. 14, 17 (2d Cir. Apr. 8, 2004) (unpublished) ("Once probable cause was established, it is irrelevant whether the officers' searches of Wilson occurred prior or subsequent to his arrest.").

As the Second Circuit held in *Scopo*, the authority to conduct a search incident to arrest vests "once the police had probable cause to stop and arrest Scopo" and not necessarily at the point of arrest. 19 F.3d at 782. In *Scopo*, officers observed a vehicle changing lanes without signaling, a violation of state traffic law, and stopped the vehicle. *Id.* at 780. As the officer approached the vehicle, they saw the driver throw an objection down inside the car. *Id.* The officer ordered the driver out of the car and frisked him for weapons. *Id.* The officers then pulled forward the passenger seat in the vehicle and searched the car for the object thrown by the driver and found a fully loaded firearm. *Id.* The Second Circuit sanctioned the search as a "protective search incident to an arrest" based on the probable cause to stop and arrest under New York law. *Id.* at 785. *See also United States v. Friedman*, Nos. 95-CR-192, 96-CR-182,

1996 WL 612456, at *15 (E.D.N.Y. June 25, 1996), *rev'd in part and aff'd in part*, 300 F.3d 111 (2d Cir. 2002) and 2002 WL 1798568, at **2 (2d Cir. Aug. 6, 2002) (approving a search of a motorist's car prior to arrest where the officer had probable cause to arrest the motorist for his inability to produce a driver's license upon demand).

The justification for a search incident to arrest prior to formal arrest is not limited to safety considerations. In *United States v. Jenkins*, an officer stopped a motorcyclist for driving with paper license plates and searched the motorcycle's saddlebag prior to effecting any arrest without noting any concerns for safety. 496 F.2d 57, 72 (2d Cir. 1974). The Second Circuit upheld the constitutionality of the search because the circumstances gave the officer probable cause to believe the motorcycle was stolen. *Id.* at 73. The Second Circuit stated: "The mere fact that the trooper reversed the procedure, conducting the search before the arrest, did not render it illegal as long as probable cause to arrest existed at the time of the search. . . . Any other holding would, without rational basis, exalt form over substance." *Id.* (citations omitted). Thus, an officer is permitted to conduct a search incident to arrest for a traffic infraction prior to a formal arrest.

A second difficulty in this case, and the one more challenging, is the fact that Sgt. Solomon did not formally place Plaintiff under arrest after the search and instead issued him three summonses. Thus, the Court must address whether a formal arrest for a traffic infraction is an essential requisite to a search incident to arrest. This Court is aware of no binding court decisions which have definitively ruled on this question. In *Stoner v. California*, where the police searched the hotel room of an armed robbery suspect two days before the suspect was arrested in another state, the Supreme Court invalidated the search stating that "search can be

23

incident to an arrest only if it is substantially contemporaneous with the arrest." 376 U.S. 483, 486 (1964). Yet, the Court later adopted an expansive definition of a "contemporaneous" arrest. In *Cupp v. Murphy*, the police had probable cause to arrest a suspect in a strangulation and seized scrapings from underneath the suspect's fingernails over his objection. 412 U.S. 291, 296 (1973). The police then freed the suspect, but arrested him one month later. *Id.* The Supreme Court upheld the "very limited search" as a search incident to arrest, reasoning that the "highly evanescent" evidence procured from the suspect warranted the search. *Id.* The Court noted, however, that it would not have been justified "without a formal arrest." *Id.* Thus, *Cupp* may stand for the proposition that "(i) if there is probable cause for arrest but no formal arrest, and (ii) if the suspect is reasonably believed to be in the actual process of destroying 'highly evanescent evident,' then (iii) that evidence may be preserved if this can be accomplished by a search which is 'very limited' as compared to a full search of the person." Wayne R. LaFave, 3 SEARCH AND SEIZURE § 5.4(b), 195 (4th ed. 2004).

Yet, several cases since *Cupp* counsel in favor of expanding its reach to the circumstances presented here, where a limited search occurred in the context of no exigencies or formal arrest. First, in *Robinson*, the Supreme Court made clear that a full-blown search incident to arrest, including going through the arrestee's pockets, is permissible merely by virtue of the lawful arrest and objective concerns for officer safety or evidence preservation is not required for any search. As the Supreme Court stated,

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.

24

*Robinson*, 414 U.S. at 235-36. Thus, if under arrest, the search for identification in Plaintiff's

pocket would have been lawful under *Robinson* even if Sgt. Solomon had no fear for his safety

or an interest in preserving evidence.

Second, in *United States v. Ricard*, 563 F.2d 45, 49 (2d Cir. 1977), in analyzing a search

incident to arrest, the Second Circuit suggests that courts focus solely on the officer's actions *at*

*the time* of the search rather than on any subsequent events. In that case, a state trooper

observed a motorist travelling twenty miles over the speed limit, an offense subject to arrest

under state law. *Id.* After checking the motorist's license, the trooper ordered the motorist out of

the car, and, then in the course of a frisk, observed a tin foil packet in his pockets. *Id.* at 48. The

motorist claimed that the packet contained "[n]othing." *Id.* Thereupon, the trooper removed the

packet, discovered it contained cocaine, and arrested the motorist for the drug offense. *Id.* at 48-

49. The Second Circuit upheld the search as a search incident to arrest even though the trooper

chose not to arrest the motorist for the traffic offense. *Id.* at 49. The Second Circuit reasoned

that "the fact that [the trooper] had cause to arrest [the motorist] for speeding, *even if he initially*

*determined not to do so,* was a sufficient predicate for a full search." *Id.* (emphasis added).

Thus, the Second Circuit found it immaterial that the trooper decided not to arrest an individual

prior to conducting a search incident to arrest. *See U.S. v. Koron*, 101 F.3d 682, 1996 WL

197234, at *2 (2d Cir. 1996) (unpublished) ("Moreover, we have held that, as long as a police

officer has probable cause to arrest a suspect prior to searching the suspect, the search will be

valid, even if the officer initially had no intention of arresting the suspect.").

Applying these principles, an officer should be entitled to search an individual for his

identification once probable cause to arrest was established regardless of the officer's decision to

arrest or not arrest the individual. *Cf.* LaFave, 3 SEARCH AND SEIZURE § 5.4(b) at 200

(suggesting the potential reach of *Cupp*: "if probable cause to arrest plus the making of the arrest

justifies a search of the person, without the necessity of also showing probable cause that there is

evidence to be found or that any evidence which is found might otherwise be lost, then why is

the same not true when there is probable cause to arrest but no arrest?"). Indeed, under the

Second Circuit's rationale, the *Ricard* search would have been justified at the time of the search

even if the trooper found nothing in the motorist's pocket. Moreover, if an officer initially

determines to arrest an individual and conducts a search prior to the arrest, a later change of mind

not to effectuate the arrest should not make the search unlawful. In other words, if the Fourth

Amendment analysis occurs at the time of the officer's search, *see Maryland v. Macon*, 472 U.S.

463, 470-71 (1985) (Fourth Amendment requires "an objective assessment of the officers actions

in light of the facts and circumstances confronting him *at the time*") (emphasis added),

subsequent actions should not be necessary to validate a lawful search. After all, the

constitutional linchpin in a search incident to arrest is the probable cause to arrest, not an

intention or announcement of formal arrest. Thus, the Court holds that the Fourth Amendment

permitted Sgt. Solomon to search Plaintiff's pocket for his identification once he established

probable cause to arrest him for the traffic infraction, even in the absence of exigent

circumstances or a subsequent arrest.[12] *But see People v. Evans*, 43 N.Y.2d 160 (N.Y. 1977).

---

[12] The Court also does not believe that *Knowles v. Iowa*, 525 U.S. 113 (1998), is implicated here. In *Knowles*, the Supreme Court held that an officer could not permissibly search a motorist's car where the officer had probable cause to arrest an individual for a traffic violation but instead issued a citation. *Id.* at 114. *Knowles* turns on the fact that the officer conducted a full search of a car *after* deciding not to arrest the driver and issuing a traffic citation. *Id.* Thus, in such a case, none of the traditional rationales for a search incident to arrest -- officer safety and destruction of evidence – apply. *Id.* at 116-19. Here, Plaintiff was still subject to arrest at the time of his search and, indeed, Sgt. Solomon threatened Plaintiff with arrest just prior to conducting the

Although Plaintiff was justifiably upset by Sgt. Solomon's intrusion and the search of a motorist for the purpose of obtaining identification should not become routine, Sgt. Solomon's actions did not amount to a constitutional tort under these circumstances. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's unreasonable search and seizure claim.

### C. Excessive Force

The Court next turns to Plaintiff's excessive force assertion. A claim for excessive force arising from the detention or arrest of an individual derives from the Fourth Amendment right to be secure from unreasonable seizures. *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). When determining whether police officers have employed excessive force, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The touchstone of the inquiry, then, is reasonableness, and in measuring it, courts "consider the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (citing *Graham*, 490 U.S. at 396).

In this case, Plaintiff asserts that Sgt. Solomon utilized excessive force in pushing Plaintiff with force against his vehicle, twisting his arm behind his back, and being held in place while he was searched and then released. According to Plaintiff, the officers continuously applied pressure on him to keep him against the vehicle and when Plaintiff attempted to turn his

---

search. Thus, Sgt. Solomon's authority to search incident to arrest remained during the time of the search and thus alleviating any *Knowles* concerns.

head to ask a question, Sgt. Solomon twisted his arm harder to get Plaintiff to stay straight. Plaintiff describes the amount of force used against him as "hard" and that it "hurt." Ex. E, Evans Dep. 192:11-12, 193:15. Plaintiff did not receive any physical injuries to his body, but he received a slight bruise on his chest. *Id.* at 193:16-20.

Under the totality of the circumstances here, these allegations simply do not rise to the level of objective unreasonableness necessary to sustain an excessive force claim. As described above, Plaintiff was subject to arrest and thus Sgt. Solomon was authorized to conduct the search. He was required to apply some force in conducting the search because Plaintiff thrice failed to volunteer his driver's license upon request. As the Second Circuit has stated, "not every push or shove" is a constitutional deprivation, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 396). The use of force as articulated by Plaintiff here is *de minimus* and cannot be described as excessive, injurious or unreasonable. Although Plaintiff need not show "permanent or severe" injuries to maintain an excessive force claim, *see Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987), the minimal force applied in these allegations and the lack of any injury whatsoever weigh heavily against Plaintiff. *See Davenport v. County of Suffolk*, No. 99-CV-3088, 2007 WL 608125, at *10 (E.D.N.Y. Feb. 23, 2007) ("[T]here may be certain circumstances where the alleged unconstitutional act and injury are so *de minimis* that it cannot rise to a constitutional violation as a matter of law.").

Plaintiff also asseverates that handcuffing him constituted excessive force considering that he was not resisting, attempting to flee, or demonstrating any threatening behavior. He also contends that, while being rear handcuffed, he was pushed up against his vehicle. According to

28

Plaintiff, the amount of force used to push Plaintiff up against the vehicle the second time was equivalent to the first time, perhaps with a little greater force. Sgt. Solomon also grabbed Plaintiff by the handcuffs and attempted to pull him fully inside his vehicle, but let the handcuffs go when Plaintiff's knees could not fit behind the seat. Plaintiff described feeling pain from the handcuffs but did not suffer from bruising or bleeding. As held above, the use of handcuffs was justified considering that Plaintiff was pacing near a traffic lane and not complying with Sgt. Solomon's orders. With the use of handcuffs warranted, Plaintiff's claim of excessive force based on the handcuff is garden variety and unavailing. *See, e.g., Wilder v. Village of Amityville*, 288 F. Supp. 2d 341 (E.D.N.Y. 2003) (excessive tightness of handcuffs resulting in the inflammation of plaintiff's wrists does not rise to the level of objective excess); *Ambrose v. Korines*, No. 03-Civ-0411, 2005 WL 1962027 (E.D.N.Y. Aug. 9, 2005) (officer's stepping on plaintiff's handcuffs as he was attempting to maneuver them under his legs and pushing of the plaintiff causing him to go back down onto a bench was not a violation of plaintiff's Fourth Amendment rights); *Hamlett v. Town of Greenburgh*, No. 05-Civ-3215, 2007 WL 119291 (S.D.N.Y. Jan. 17, 2007) (tightness of handcuffs and the force used by two officers to hold back plaintiff's arms did not rise to the level of force required to sustain an excessive force claim.).

## D.    Malicious Prosecution & Malicious Abuse of Process

Plaintiff also appears to assert claims for malicious prosecution and malicious abuse of process under *Bivens*. Defendants maintain that Plaintiff raised these claims for the first time in his answer brief and that even a liberal reading of Plaintiff's complaint fails to reveal any claim for malicious prosecution or malicious abuse of process. The Court agrees.

A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim. *See* Fed. R. Civ. P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "Although a complaint need not correctly plead every legal theory supporting the claim, . . ., at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense." *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) (internal citations omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 199 n.2 (2d Cir. 2004) ("It is well established that the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.") (internal quotation marks omitted). Thus, if a complaint does not fairly assert facts supporting a particular cause of action, "it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion." *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) (internal quotation marks omitted). In reviewing a *pro se* plaintiff's complaint, this Court is obliged to construe his pleadings liberally, "particularly when they allege civil rights violations." *McEachin*, 357 F.3d at 200.

Thus, even if Plaintiff's complaint has no cause of action labeled "malicious prosecution" or "malicious abuse of process," the Court is duty-bound to consider these claims if the pleaded facts could support such claims. Nevertheless, Plaintiff has failed to allege any facts supporting either cause of action. The gravamen of the complaint concerns Plaintiff's detention and search by Sgt. Solomon. *See* Compl. ¶¶ 3-16. It neither complains of actions taken after his alleged search and seizure nor does it even mention that Sgt. Solomon issued Plaintiff any summonses, essential predicates for malicious prosecution and abuse of process claims. Thus, even under the

most liberal pleading standards, Plaintiff's complaint is wholly lacking in allegations to place Defendants on notice of malicious prosecution or malicious abuse of process claims.

In response, Plaintiff maintains that he submitted a "Claim for Damage, Injury, or Death" or a "Standard form 95 (Rev 7-85)" on July 5, 2005 that contained several attachments. In one of the attachments is a document in which he states that, "[Sgt. Solomon] unlawfully issued me a summons for 'failure to comply with [an] order' and for disorderly conduct. Thereafter, he unlawfully and maliciously caused me to be prosecuted in the Criminal Court of the City of New York, Kings County." Pl. 2nd Opp. Br. 5. He claims that this document was marked on January 24, 2008 as Deposition Exhibit "L." *Id.* Unfortunately, the Court has scoured the record and has been unable to locate this document. Thus, it is difficult to determine its significance in determining the scope of Plaintiff's claims.

Without more, it would thus be inappropriate at this summary judgment stage, after the close of discovery, without the Court's leave, to consider claims raised for the first time in a brief in opposition to a dispositive motion. *See Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F.Supp. 1342, 1359 (S.D.N.Y. 1997). Under these circumstances, the Court cannot grant or deny summary judgment on these "claims" as they are not claims within the meaning of Federal Rules of Civil Procedure 8(a), 10(b), and 56(b). *See id.*; *Beckman*, 79 F. Supp. 2d at 409 n.19. Accordingly, the Court will not consider the merits of these contentions within this summary judgment motion.

### F.    Qualified Immunity

The doctrine of "[q]ualified immunity shields police officers acting in their official capacity from suits for damages . . . unless their actions violate clearly-established rights of

which an objectively reasonable official would have known." *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (internal quotation marks omitted). In this case, the Court holds that (1) probable cause existed to stop Plaintiff for a traffic violation, (2) the probable cause to arrest Plaintiff authorized him to search Plaintiff's pocket for his license, (3) safety considerations justified placing Plaintiff in handcuffs, and (4) the minimal use of force to obtain Plaintiff's license and place him in handcuffs was reasonable under the circumstances. Thus, it was objectively reasonable for Sgt. Solomon to believe that his actions did not violate a clearly-established right. Accordingly, Defendant Officers' defense of qualified immunity to Plaintiff's claims of false arrest, unreasonable search and seizure, and excessive force is granted.

All *Bivens* causes of action against defendant Solomon is hereby dismissed.

## II.    FTCA Claims

Plaintiff also asserts claims against the United States pursuant to the FTCA.[13] Under the FTCA, a plaintiff may sue the United States for certain torts cognizable under state law committed by federal employees in their official capacity. *See* 28 U.S.C. § 2679(b)(1); *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). Since claims brought under the FTCA cannot include federal constitutional torts, courts look to the law of the state in which the tort occurred. *Koester v. Lanfranchi*, 766, 2008 WL 3842253, at *1 (2d Cir. 2008) (citing 28 U.S.C. § 1346(b)(1) (establishing liability "in accordance with the law of the place where the act or

---

[13] To the extent Plaintiff seeks to assert FTCA claims against Sgt. Solomon, those claims are dismissed with prejudice because the United States is the sole proper defendant to a claim brought under the FTCA. *See* 28 U.S.C. § 2679(a) and (d)(1): *see Rivera v. United States*, 928 F.2d 592, 608-609 (2d Cir. 1991) (United States is the proper party in an FTCA suit where the individual employee acted within the scope of his employment). Since Defendants maintain that Sgt. Solomon was acting under his authority as a U.S. Park Police officer at the time of Plaintiff's traffic stop, the Court finds that he was acting within the scope of his federal employment.

omission occurred.")). Liberally construing Plaintiff's complaint, Plaintiff fairly raises state law torts of false arrest, battery,[14] and a state constitutional tort for unreasonable search and seizure.

## A.    State Constitutional Tort for Unreasonable Search and Seizure & Battery

The New York Court of Appeals established a right to pursue a state constitutional tort claim for damages for violations of the right to be free of unreasonable searches and seizures under Article I, § 12 of the New York Constitution. *Brown v. State of New York,* 89 N.Y.2d 172, 191-192 (N.Y. 1996). Like the Fourth Amendment of the federal Constitution, Article I, § 12 of the New York Constitution holds, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated[.]" Section 12 "imposes a duty regulating the conduct of police officials," *Brown,* 89 N.Y.2d at 191, and thus would apply to a federal official acting pursuant to state-conferred peace officer authority.

Although the text of Section 12 of the New York Constitution and the Fourth Amendment of the U.S. Constitution are nearly identical, their scope is not necessarily co-terminus. As recently recognized by a federal court, "New York's Constitution provides broader protections against warrantless . . . searches." *5 Borough Pawn, LLC v. City of New York,* 640 F. Supp. 2d 268, 299 (S.D.N.Y. 2009); *see also People v. Torres,* 74 N.Y.2d 224, 228 (N.Y. 1989) ("[The New York Court of Appeals] demonstrated its willingness to adopt more protective standards under the State Constitution when doing so best promotes predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our

---

[14]    Although the FTCA does not waive sovereign immunity for intentional torts committed by federal employees, an exception to this bar exists for law enforcement officers' intentional torts committed in the course of a search, seizure, or arrest. 28 U.S.C. § 2680(h). *See generally Ortiz v. Pearson,* 88 F. Supp. 2d 151, 154 (S.D.N.Y. 2000). Thus, the intentional torts of false arrest and battery may be brought against the United States.

citizens.") (internal quotation marks omitted). The broader protections of Section 12 apply with particular force in the context of traffic stops. *See People v. Taylor*, 741 N.Y.S.2d 822, 824 (N.Y. App. Div. 2002) (noting that the N.Y. "Court of Appeals has determined that N.Y. Constitution, article I, § 12 imposes some limits on such searches not found under the Fourth Amendment, particularly in the area of arrests for minor traffic violations"). Indeed, under New York law, a traffic infraction in itself does not give the police the authority to search a motorist's person. *See People v. Harrill*, No. 2973/07, 2008 WL 2279748, at *3 (N.Y. Sup. Ct. June 3, 2008); *see also People v. Kolb*, No. 41324, 2009 WL 2451003, at *3 (N.Y. Watertown City Ct. July 1, 2009) ("[W]hen a driver is only stopped for a traffic infraction, a police officer is *not* permitted to search the defendant's person or automobile.") (emphasis original) (quoting Barry Kamins, NEW YORK SEARCH & SEIZURE (2009 ed.)); *People v. Woods*, 592 N.Y.S.2d 748, 751 (N.Y. App. Div. 1993) ("A stop for a traffic offense will not justify a search of the motorist or of the vehicle unless there are reasonable grounds for believing the motorist guilty of a crime, as opposed to a traffic offense. . . ."); *People v. Marsh*, 20 N.Y.2d 98, 100 (N.Y. 1967) ("There is no question, and the entire court agrees, that a police officer is not authorized to conduct a search every time he stops a motorist for speeding or some other ordinary traffic infraction."). On the other hand, an officer, acting on reasonable suspicion that criminal activity is afoot, has an articulable basis to fear for his own safety may conduct a search at a traffic stop. *See Torres*, 74 N.Y.2d at 226. Even then, the officer may intrude upon the person or personal effects of the motorist only to the extent necessary to protect himself from harm. *Id.*

Here Sgt. Solomon had no reasonable suspicion that Plaintiff was involved in criminal activity aside from the traffic infractions nor did he express any basis to fear for his safety. At

the time of the search, Sgt. Solomon only had probable cause to stop Plaintiff for failing to obey a red light and for failing to exhibit a driver's license, both of which are only traffic infractions. Thus, these infractions would not authorize Sgt. Solomon to conduct a search of Plaintiff's person.

Furthermore, unlike under the federal Constitution, the search cannot be construed as a search incident to arrest. First, New York law does not necessarily permit a full-blown search incident to arrest for all traffic arrests. Under New York law, "[t]here is, perhaps, an area of traffic violation 'arrest' where a full-blown search is not justified, but it might seem to be confined to a situation where an arrest was not necessary because an alternative summons was available or because the arrest was a suspect pretext." *People v. Troiano*, 35 N.Y.2d 476, 478 (N.Y. 1974). *Troiano*'s pronouncement was in turn based on *Marsh*. In *Marsh*, a police officer executing an arrest warrant for a speeding traffic infraction searched the defendant and took a book of matches from his pocket. 20 N.Y.2d at 100. The officer opened the match cover and found a sheet of paper which implicated Marsh in the "playing of policy." *Id.* His conviction for possession of a policy slip was reversed in part on the ground that the search exceeded the State constitutional limits on search and seizure. *Id.* The *Marsh* court reasoned that a traffic infraction generally does not bear "fruits" or "implements" to recover and they do not show a "propensity for violence or iniquity" – the traditional justifications for a search incident to arrest. *Id.* at 101. Thus, in the context of a failure to produce an identification, "an arrest for the traffic infraction of driving without a license would not provide authority for a search incident to that arrest[.]" *People v. Cooper*, 833 N.Y.S.2d 118, 120 (N.Y. App. Div. 2007) (citing *Marsh,* 20 N.Y.2d at 98). Thus, Plaintiff's traffic infractions may not have justified a full-blown search even if he was

placed under arrest. At most, it appears that Plaintiff would have only been subject to a "frisk" for weapons and the Court doubts that such a pat-down would authorize the removal of his identification from his wallet. *Cf. Trioano*, 35 N.Y.2d at 480 (describing the removal of the match box from Marsh's pocket as more than a frisk) (Rabin, J., concurring).

Second, and more importantly, New York courts have emphatically held that "[a]n arrest is an essential requisite to a search incident [to arrest.]" *People v. Evans*, 42 N.Y.2d 160, 165 (N.Y. 1977). Thus, without a formal arrest, there can be no search incident to arrest under New York law. In *Evans*, after a police officer established probable cause to arrest an individual for a drug offense and a frisk revealed no weapons, the officer asked the individual for identification and told the individual to empty his pockets. *Id.* at 163. When no contraband was found, the officer let the individual go; the individual was then arrested a month later. *Id.* In rejecting the State's argument that the search was a valid search incident to arrest, the New York Court of Appeals held that the justifications for a search incident to arrest, mainly officer safety and the preservation of evidence, do not apply when the individual is not arrested. *Id.* at 165. According to the court of appeals, "[t]o adopt the proposition that the search was valid because there was probable cause to arrest puts the cart before the horse." *Id.* The New York Court of Appeals then held the search and the arrest must be "contemporaneous with the arrest," constituting a "single res gestae" or "one event." *Id.* at 166. The court limited the Supreme Court's holding in *Cupp* to the specific circumstances of that case. *Id.* at 167.

Here, Defendants maintain that Plaintiff was never under arrest and Sgt. Solomon only issued him three summonses out of leniency. Accordingly, any search of Plaintiff beyond a frisk violated Section 12 of the New York Constitution. *See also People v. Erwin*, 42 N.Y.2d 1064,

36

1065 (N.Y. 1977) (holding that, even though reasonable cause to effectuate an arrest for a traffic infraction existed, where no such arrest was made, a subsequent search of defendant's person can only be justified if independent reasonable cause existed).

Thus, at this stage, it appears that Sgt. Solomon performed an unreasonable search under New York's Constitution and consequently Sgt. Solomon may have also exceeded his authority under New York law. *See* N.Y. Crim. Proc. L. § 2.20(c), § 2.15(9) (a U.S. park police officer has the "power to carry out warrantless searches whenever such searches are constitutionally permissible and acting pursuant to their special duties"). Under these circumstances, the Court denies Defendant United States' motion for summary judgment on the state constitutional tort of unreasonable search and seizure.

Furthermore, under New York law, a battery is "an intentional wrongful physical contact with another person without consent." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty*, 994 F.2d 105, 108 (2d Cir. 1993). To the extent that Sgt. Solomon's search and seizure was not privileged, it may have also constituted a battery. The Court thus denies defendant United States' motion for summary judgment on the state tort claim of battery.

**B.      False Arrest**

For the reasons set forth in the *Bivens* section, the Court grants Defendant United States' motion for summary judgment with respect to the state tort claim of false arrest. *See Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)

## *CONCLUSION*

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. The Court grants summary judgment on the following claims: the *Bivens*

claims against defendant Solomon, all FTCA claims against Sgt. Solomon, and the FTCA claims for false arrest against defendant United States. These claims are hereby dismissed from this action. The Court denies summary judgment for Plaintiff's FTCA claims for battery and illegal search and seizure against defendant United States. Defendant Solomon is no longer a party to this action, but pursuant to the FTCA claims, the United States remains a defendant.

**SO ORDERED.**

Dated: Brooklyn, New York
January /4 , 2010

/SANDRA L. TOWNES
/ United States District Judge