FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 15 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMAL EVANS,

                                  Plaintiff,      **MEMORANDUM & ORDER**

          — against —                   06-CV-3284 (SLT) (LB)

CLYDE SOLOMON and
UNITED STATES OF AMERICA

                                Defendants.
----------------------------------------------------------X
**TOWNES, United States District Judge:**

        Plaintiff Jamal R. Evans, proceeding pro se, filed this action under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Torts Claims Act, 28 U.S.C. §§ 1346, 2671 et seq. ("FTCA"), asserting various claims against Clyde Solomon, a United States Park Police Officer, and the United States ("Defendant") stemming from a 2003 traffic stop. On January 14, 2010, this Court granted Defendant's motion for summary judgment as to all claims except for Plaintiff's FTCA claims against the United States for (1) illegal search and seizure and (2) battery. (Docket No. 66 ("M&O I")). On August 11, 2010, in response to Defendant's first motion for partial reconsideration, the Court dismissed the illegal search and seizure claim, leaving only Plaintiff's FTCA claim for battery against the United States. (Docket No. 76 ("M&O II")). Defendant now moves for reconsideration of that Order pursuant to Local Civil Rule 6.3. For the following reasons, Defendant's motion is granted to the extent of reconsidering the basis for dismissing the search and seizure claim, but denied in all other respects.

## BACKGROUND

The Court presumes familiarity with the factual background in this matter. See Evans v. Solomon, 681 F. Supp. 2d 233 (E.D.N.Y. 2010).

## DISCUSSION

### I. Standard for Reconsideration

It is well settled that whether to "grant or deny a motion for reconsideration lies squarely within the discretion of the district court." Murphy v. First Reliance Standard Life Ins. Co., No. 08-CV-3603 (DRH) (WDW), 2010 WL 2243356, at *3 (E.D.N.Y. June 1, 2010). Additionally, the standard is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see Local Civ. R. 6.3. For decisions or data to have been "overlooked," they "must have been put before the court on the underlying motion." Chin v. U.S. Postal Service, No. 08-CV-1035 (FB) (CLP), 2009 WL 3174144, at *1 (E.D.N.Y. Oct. 1, 2009) (internal quotation marks and bracketing omitted). A motion for reconsideration therefore is not a vehicle for a "moving party seek[ing] solely to relitigate an issue already decided." Shrader, 70 F.3d at 257. Ultimately, a motion for reconsideration "is generally not favored and is properly granted only upon a showing of exceptional circumstances," Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004), such as to correct "clear error" or to prevent "manifest injustice," Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004).

## II. Motion for Reconsideration

Defendant asserts that this Court should modify its second Order by granting summary judgment as to the battery claim and reconsidering the basis for dismissal of the search and seizure claim. Specifically, Defendant argues that (1) this Court lacks subject-matter jurisdiction over Plaintiff's state constitutional claim for unreasonable search and seizure, (2) the state common law battery claim is thus "duplicative in its entirety of a claim that a plaintiff . . . does not have a legal right to bring against the United States," and (3) Sgt. Solomon's search was reasonable under the New York State Constitution despite the absence of formal arrest. (See Def.'s Mem. at 1-3).

### A. Reconsideration of Grounds for State Constitutional Claim Dismissal

#### 1. Subject-matter Jurisdiction

Although the Court already has granted summary judgment with respect to Plaintiff's New York unlawful search and seizure claim, Defendant asks the Court to reconsider the basis for that holding because of its potential impact on the remaining battery claim. (See id. at 7 n.2). Indeed, it is well established that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see Natl. Comm. to Pres. Soc. Sec. & Medicare v. Philip Morris USA Inc., No. 09-2321-cv, 2010 WL 3933494, at *1 (2d Cir. Oct. 8, 2010) (vacating dismissal and remanding with instructions to dismiss instead for lack of subject-matter jurisdiction). The Court therefore will reexamine the jurisdictional question as to Plaintiff's state constitutional tort claim.

### 2. FTCA Provisions

The FTCA provides that a suit against the United States is the "exclusive" remedy for damages that arise "from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). Accordingly, to the extent that Plaintiff originally sought to assert FTCA claims against Sgt. Solomon individually, those claims were dismissed because the statute provides government employees with immunity against common law tort claims. See 28 U.S.C. § 2679(a) and (d)(1); Rivera v. United States, 928 F.2d 592, 608-609 (2d Cir. 1991). Under the FTCA, the United States may be held liable "with regard to acts or omissions of investigative or law enforcement officers of the United States Government" in claims arising out of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution," 28 U.S.C. § 2680(h), "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674.

In this case, Plaintiff alleges that Sgt. Solomon, a federal law enforcement officer as defined by the FTCA, 28 U.S.C. § 2680(h), unlawfully searched his pocket to remove his wallet and extract his driver's license and registration, causing injury to his person and damage to his property. (Compl. ¶¶ 10-14).

### 3. Analysis

As an initial matter, this Court liberally construed Plaintiff's complaint to include a state constitutional tort claim for the right to be free from unreasonable searches and seizures under Article I, § 12 of the New York Constitution. (M&O I at 33). The Court then dismissed that claim on the ground that New York law favors the vindication of rights through common law

4

torts, as opposed to constitutional tort claims, if such causes of action are available to a plaintiff. (M&O II at 8). Upon reconsideration, however, this Court agrees with another district court's conclusion that a state constitutional tort claim appears to be unavailable in the FTCA context:

> Although the New York Court of Appeals has acknowledged that damages may be sought against the state of New York for violations of the . . . search and seizure guarantees of the New York State Constitution, there was never any suggestion in the seminal case establishing that proposition . . . that the implied right of action recognized therein extended liability to federal officials.

Li v. Aponte, No. 05 Civ. 6237 (NRB), 2008 WL 4308127, at *11 (S.D.N.Y. Sept. 16, 2008) (citing Brown v. State of New York, 89 N.Y.2d 172 (1996)) (emphasis added). This Court therefore affirms its previous dismissal of Plaintiff's state constitutional tort claim, but on the ground of lack of subject-matter jurisdiction.

### B. Reconsideration of Battery Claim

#### 1. As Related to State Constitutional Claim

As noted, this Court previously dismissed the state constitutional tort claim because although the New York Court of Appeals recognized a cause of action for unreasonable search and seizure in Brown, 89 N.Y.2d 172, its "application has been limited by both district and state courts to situations where the plaintiffs have no alternative remedies that would protect their interests." Vilkhu v. City of New York, No. 06-CV-2095 (CPS) (JO), 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008) (collecting cases). Following that line of reasoning, the Court previously dismissed Plaintiff's state constitutional claim because his search and seizure rights could properly be vindicated by the common law tort of battery (M&O II at 8). Dismissal of that claim is now based upon lack of subject-matter jurisdiction.

5

In the instant motion, Defendant has seized upon the Court's use of the word "duplicative" in arguing that Plaintiff's battery claim should be dismissed because it "cannot be disguised for a claim that the Court lacks subject matter jurisdiction to hear," namely the state constitutional tort claim. (Def.'s Mem. at 21). Such parsing goes too far. The issue under New York law, as it applies here, is what type of claim a plaintiff may bring – not whether a plaintiff may bring a claim at all – when search and seizure violations are alleged.

For example, in Lyles v. New York, the state court affirmed dismissal of the claimant's State constitutional claims as unnecessary "to ensure the full realization of his rights, because the alleged wrongs could have been redressed by an alternative remedy, namely, timely interposed common-law tort claims for assault and battery, false imprisonment, and the intentional and negligent injury to his property." 2 A.D.3d 694, 695 (2nd Dep't 2003), aff'd, 3 N.Y.3d 396 (2004). The trial court had described the common law remedy as "essentially duplicative of a constitutional tort remedy." Lyles v. New York, 194 Misc.2d 32, 36 (Ct. Cl. 2002). See also Muhammad v. New York City Transit Auth., 450 F. Supp. 2d 198, 212 (E.D.N.Y. 2006) (dismissing state constitutional tort claim because New York Human Rights Law provided "one avenue for redressing the alleged religious discrimination"). Conveying the interconnectedness of the two types of claims, the question under Brown is "whether the available common-law remedy will insure the effectiveness of the constitutional provision. If not, it may be appropriate to imply a remedy under the Constitution." Remley v. New York, 174 Misc.2d 523, 527 (Ct. Cl. 1997).

In each of these cases, the court found no basis for the constitutional tort claim to survive, but noted that common law tort claims could at least proceed (so long as they were properly

filed). Correspondingly, in the instant FTCA-governed case, dismissal of Plaintiff's state constitutional tort claim, even for lack of subject-matter jurisdiction, does not automatically foreclose his common law battery claim. In Li, the court similarly construed some of the plaintiff's allegations "as falling under article I, section 12 of the New York constitution, the counterpart to the Fourth Amendment's search and seizure provision," Li, 2008 WL 4308127, at *11 n.44, and ultimately granted summary judgment as to those claims – but denied it as to the plaintiff's assault and battery claims, id. at *8, *13. See also Cunningham v. United States, 472 F. Supp. 2d 366, 381 (E.D.N.Y. 2007) (dismissing assault and battery claims under FTCA not because disguised as barred constitutional claim, but because court found reasonable force used after lawful arrest). Accordingly, Plaintiff's battery claim is not subject to dismissal simply because the constitutional claim covering the same incident is unavailable to him in the FTCA context.

### 2. Additional Proposed Grounds for Dismissal

Defendant argues that the Court should also reconsider its decision to deny summary judgment on the battery claim because "Sgt. Solomon did not falsely arrest Plaintiff" and the "search was permissible." (Def.'s Mem. at 21). These arguments are unavailing.

#### i. Elements of Common Law Battery

To determine what tort elements must be alleged to establish liability under the FTCA, a court must look to the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see Koester v. Lanfranchi, 288 Fed. Appx. 764, 766 (2d Cir. 2008). Since the incident in this case took place in Brooklyn, the Court looks to New York law, which defines battery as "an intentional wrongful physical contact with another person without consent."

Cunningham, 472 F. Supp. 2d at 380 (quoting Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001)). To recover, a plaintiff must establish "that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent." Id. (citation omitted). Moreover, the intent element in an action for battery "is the intent to make contact, not to do injury." Lambertson v. United States, 528 F.2d 441, 444 (2d Cir. 1976).

In this case, it is undisputed that Sgt. Solomon intended to and in fact used bodily contact to restrain Plaintiff without his consent, and that the contact was offensive in nature. The next question, however, is whether the intentional conduct took place in the context of a lawful arrest, because "where there has been a lawful arrest, intentional contact with the arrested person does not constitute assault and battery, provided such force is reasonable." Cunningham, 472 F. Supp. at 381 (collecting New York cases). Defendant has consistently maintained that "despite having the authority to formally arrest Plaintiff, Sgt. Solomon chose not to formally arrest him." (Def.'s Mem. at 7; see also Docket No. 50 at 21 & n.3; Docket No. 51 ¶ 100). Defendant therefore is not able to establish whether the search was reasonable as one incident to arrest because, as this Court has previously discussed at length, New York law treats actual arrest as a threshold matter to that specific inquiry. See People v. Evans, 43 N.Y.2d 160, 165 (1977) ("[T]he simple fact that he did not arrest the defendant prevents the [search] justifications from coming into being."); People v. Erwin, 42 N.Y.2d 1064, 1065 (1977) (finding search unreasonable where "[a]lthough there may have been reasonable cause to effectuate an arrest for a traffic infraction, no such arrest was made"). Indeed, Defendant continues to rely upon inapposite cases that involve searches performed shortly before or after a formal arrest. (See Def.'s Mem. at 8-9; M&O II at 4). Furthermore, Defendant's reliance on a Massachusetts case is unavailing; that a

Massachusetts state court has disagreed with this approach is of no moment, other than recognizing the existence of the distinction under New York law. (See Def.'s Mem. at 8-9 n.3, 11 n.5 (citing Commonwealth v. Skea, 18 Mass. App. Ct. 685 (1984)).

Defendant also states that, as a practical matter, this Court's conclusion means that after observing Plaintiff commit a traffic violation and then refuse a lawful demand to produce his license, "Sgt. Solomon had two options: (1) formally arrest Plaintiff, or (2) do nothing and, thus, not do his job." (Id. at 17). Defendant cites People v. Isaac, 38 Misc.2d 1018 (N.Y. Sup. 1963), in which the driver, like Plaintiff, refused to produce identification to an officer at a traffic stop. In both cases, the absence of identification meant that issuing a summons "might have amounted to an exercise in futility." Id. at 1022. In Isaac, however, the officer responded by arresting the driver. Defendant points to Isaac to show that "the second option (that Sgt. Solomon do nothing) is not, in fact an option," (Def.'s Mem. at 17), because police have "an obligation to enforce the traffic laws" and the officer "could not ignore" the statutory presumption that the defendant was driving without a license, Isaac, 38 Misc.2d at 1022-23. Yet, far from calling this Court's prior decision into question, Isaac simply reinforces the conclusion that under New York case law, it was necessary to arrest Plaintiff before any "justifications" of a search incident to arrest could "com[e] into being." Evans, 43 N.Y.2d at 165. See also Wachtler v. County of Herkimer, 35 F.3d 77, 81 (2d Cir. 1994) ("Green had no choice but to arrest Wachtler or irresponsibly let him depart without even a citation for the traffic violation."); People v. Ellis, 62 N.Y.2d 393, 396 (1984) ("Once it became evident that defendant could not be issued a summons on the spot because of his inability to produce any identification, the officers were warranted in arresting

9

him to remove him to the police station."). In this case, because Sgt. Solomon did not effect a formal arrest, his search of Plaintiff was not privileged[1] and may have constituted a battery.[2]

### ii. Reasonableness of Search as Related to Battery Claim

Defendant argues that the absence of formal arrest "should not abrogate any evaluation of the reasonableness of Sgt. Solomon's limited search." (Def.'s Mem. at 8). It does not. The absence of formal arrest in this case simply means that an evaluation of reasonableness takes place not in the context of search incident to arrest, but as part of a different inquiry. As in Erwin, "[t]here being no arrest the subsequent search of [Plaintiff's] person . . . can be justified only if <u>independent reasonable cause</u> existed." 42 N.Y.2d at 1065 (emphasis added). This Court already has observed that, under New York law, "[t]he fact of the traffic infraction itself did not give the police the authority to search the [driver]'s person." People v. Harrill, No. 2973/07, 2008 WL 2279748, at *3 (N.Y. Sup. Ct. June 3, 2008); see also People v. Marsh, 20 N.Y.2d 98, 100 (1967) ("There is no question . . . that a police officer is not authorized to conduct a search every time he stops a motorist for speeding or some other ordinary traffic infraction."). Nevertheless, an officer "acting on reasonable suspicion that criminal activity is afoot and on an articulable basis to fear for his own safety may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself from harm." People v. Torres, 74 N.Y.2d 224, 226 (1989).

---

[1] Indeed, "New York cases support the proposition that a law enforcement officer's privilege remains limited to constitutional searches and seizures." Voskerchian v. United States, No. 98-CV-0335E(M), 1999 WL 66709, at *4 (W.D.N.Y. Feb. 10, 1999) (evaluating search and seizure in context of common law tort of trespass) (collecting New York State cases).

[2] The Court will not revisit its discussion of whether the search might have been reasonable had Sgt. Solomon formally arrested Plaintiff, (M&O II at 5-6), as Defendant maintains its position that no such arrest took place.

10

In this case, Defendant argues that the "limited search of Plaintiff was reasonable and constitutional" because "intrusion into Plaintiff's front pants' pocket was both justified and reasonably related in scope and intensity to the circumstances confronting Sgt. Solomon." (Def.'s Mem. at 12). In support of that argument, however, Defendant again relies on New York cases in which the search was performed either just before or after a formal arrest. (Id. at 12-14). As noted, in the absence of formal arrest, the question with regard to the battery claim is whether "independent reasonable cause existed" for the search performed under the circumstances of this traffic stop. Erwin, 42 N.Y.2d at 1065. In response to Defendant's reliance on Cupp v. Murphy, 412 U.S. 291, 296 (1973), (Def.'s Mem at 11), it is worth reiterating that New York law controls, and while Sgt. Solomon's search might have passed federal muster, it may fall short of state protections. See 5 Borough Pawn, LLC v. City of New York, 640 F. Supp. 2d 268, 288 (S.D.N.Y. 2009) ("The United States Constitution provides the floor for the protections afforded citizens – not a ceiling . . . [and] states are free to expand upon constitutional safeguards and give the citizens of their state greater protections.").[3]

In this case, after Plaintiff was stopped for a traffic infraction and repeatedly refused to produce his license and registration, Sgt. Solomon resolved not to arrest Plaintiff, but instead grabbed his wrist, turned it behind his back, pushed him against the car, and removed his wallet from his pocket to extract the identification materials. (Def.'s Rule 56.1 Stmt. ¶¶ 101-110). Defendant has not demonstrated at this stage that, as a matter of law, Sgt. Solomon had independent reasonable cause to effect this search of Plaintiff, who arguably did not evince a

---

[3] Defendant's reliance on People v. Clements, 37 N.Y.2d 675 (1975), for the proposition that the lesser intrusion is included in the greater, is also misplaced. (Def.'s Mem. at 16). Clements did not involve a traffic offense and, even more fundamentally, the defendants actually were arrested. This Court has previously considered and distinguished People v. Hazelwood, 429 N.Y.S.2d 1012 (N.Y. Crim. Ct. 1980), on similar grounds. (M&O II at 6-7).

11

threat of criminal activity or potential injury to the officer. Under the strict standard for reconsideration and construing the facts "in the light most favorable to the non-moving party," the Court finds that summary judgment still is inappropriate because "the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).

## CONCLUSION

For the foregoing reasons, Defendant's motion (Docket No. 79) is granted to the extent of reconsidering the basis for dismissing the search and seizure claim, but denied in all other respects. The FTCA claim for battery against defendant United States remains. Plaintiff's objections to reconsideration (Docket No. 82) are untimely.

**SO ORDERED.**

/ SANDRA L. TOWNES
United States District Judge

Dated: February /4, 2011
Brooklyn, New York